# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | | |
|---|---|---|
| SANDRA L. BUTLER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 5:11-CV-418 (WLS) |
| | : | |
| LINCOLN BENEFIT LIFE COMPANY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Presently pending before the Court is Defendant Lincoln Benefit Life Company's Motion for Summary Judgment (Doc. 24).  For the following reasons, Defendant Lincoln Benefit Life Company's Motion for Summary Judgment (Doc. 24) is **GRANTED-IN-PART and DENIED-IN-PART**.

## I.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

On May 6, 2010, Billy Butler applied for a $400,000 life insurance policy with Lincoln Benefit Life Company.[1]  (Doc. 27 ¶ 2.)  The application for insurance asked whether Mr. Butler had "ever been diagnosed with, or sought treatment or advice for dependency on or addiction to alcohol or any drug."  (*Id.* ¶ 3.)  Mr. Butler answered "No."  (*Id.* ¶ 5.)  On January 14, 2011, less than six months after Lincoln issued an insurance policy to Mr. Butler, Mr. Butler died of cardiopulmonary disease.  (*Id.* ¶ 9.)

---

[1] The following facts are derived from the Complaint (Doc. 1); Defendant's Answer (Doc. 3); Defendant's Statement of Undisputed Facts (Doc. 27), Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. 35-1), and Defendant's Response to Additional Facts Asserted in Plaintiff's Responsive Statement of Facts (Doc. 40), all of which were submitted pursuant to Local Rule 56; and the record in this case.  Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56.

Because Mr. Butler's death occurred within the Policy's two-year contestability period, Lincoln conducted an investigation to determine the extent of its liability. (*Id.* ¶¶ 11-12.)

During its investigation, Lincoln found that medical records showed that Mr. Butler "had a history of alcoholism, was diagnosed with alcoholic liver disease ("ALD"), and suffered from other medical conditions." (*Id.* ¶ 13.) Per Defendant, "[t]he terms *alcoholism, alcohol, alcohol abuse* and different variation [sic] thereof appear at least **29 times** in Mr. Butler's medical records." (*Id.* ¶ 15) (emphasis in original). After concluding its investigation, in a letter dated April 29, 2011, Lincoln notified Plaintiff of its decision to rescind the Policy. (*Id.* ¶ 36.) In the letter, Defendant informed Plaintiff that Mr. Butler failed to disclose that: 1) on April 9, 2008, Dr. Anilkumar Pillai informed Mr. Butler that he had ALD and advised Mr. Butler to stop drinking; 2) on March 28, 2010, Mr. Butler was seen by Dr. Charles H. Richardson, where he admitted to a history of alcoholism and drinking one-fifth of a quart of whiskey every 3 to 4 days; and 3) Plaintiff informed Dr. Quyen Luu on September 1, 2010, in a consultation report, that Mr. Butler was drinking alcohol heavily and falling in June of 2010. (Doc. 26-2 at 48.) Per Defendant, "[n]one of this very significant medical history was disclosed by Mr. Butler when the Application for Life Insurance Medical Questionnaire Part 2 was completed." (*Id.*) Defendant went on to inform Plaintiff that, "[g]iven Mr. Butler's history of alcoholism and diagnosis of ALD as revealed in his medical records," Mr. Butler should have answered "yes" to the question: "Has the proposed insured EVER been diagnosed with, or sought treatment or advice for dependency on or addiction to alcohol or any drug?" (*Id.* at 49.) Defendant then stated that its underwriters confirmed that had they known of Mr. Butler's diagnosis of ALD, no coverage would have been offered. (*Id.*) As such, Defendant concluded that Mr. Butler's

representations were false and material to the Company's decision to issue the Policy. (*Id.*)  Consequently, Plaintiff was informed that Lincoln was rescinding the Policy as of its intended effective date.  (*Id.*)  Lincoln enclosed a check in the amount of $91,785.48 for the premiums paid by Mr. Butler.  (*Id.*)

On October 18, 2011, Plaintiff filed the instant Complaint, alleging state-law claims for breach of contract and bad faith against Lincoln.  (Doc. 1.)  Per Plaintiff, Mr. Butler was never diagnosed with dependency or addiction to alcohol and never sought treatment or advice for dependency on alcohol.  (*Id.* ¶¶ 16-23.)  As such, Mr. Butler did not make any false and material representations on his Application.  (*Id.* ¶ 25.)

Defendant now argues that it is entitled to judgment as a matter of law because "there is no genuine issue of fact regarding whether it (Lincoln), *in good faith*, would have issued the Policy had it known about Mr. Butler's medical conditions related to alcohol, including his diagnosis with ALD and his continued use of alcohol."  (Doc. 25 at 15.)  In opposition to Defendant's motion, Plaintiff contends that Mr. Butler's "no" answer was not false because Dr. Pillai merely told Mr. Butler that he could have ALD.  (Doc. 26-8 at 15, 51:2-5, "I told him that this can be alcoholic liver disease;" *id.* at 18, 63:18-23, "[B]ut that is what I put, it can be alcoholic liver disease.")  Plaintiff also argues that answer "no" constitutes a misrepresentation, Defendant has failed to show that there is no genuine issue of disputed fact as to whether the misrepresentation was material.  (Doc. 35 at 6.)  According to Plaintiff, Lincoln's Chief Underwriter, Karen Levek, had Mr. Butler admitted to his diagnosis of ALD, Lincoln "would have obtained medical records and an alcohol questionnaire."  (*Id.*)  Thus, per Plaintiff, the evidence does not show that coverage "would . . . have been declined merely because Mr. Butler had a history of alcoholic liver disease."  (*Id.* at 7.)  Therefore, according to Plaintiff,

because summary judgment on the issue of materiality requires an uncontradicted statement from an underwriter stating that the company would not have issued the policy, Defendant is not entitled to judgment as a matter of law. (*Id.* at 21-22.) Plaintiff also contends that the determination of whether Lincoln acted in bad faith in denying coverage should be made by a jury. (*Id.* at 22.)

## II.   DISCUSSION

### A. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Allen*, 121 F.3d at 646. A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. *See Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 804 (1999); *Celotex*, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.

*See id.* at 322-24.  Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts."  *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict.  *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.  However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c).

B.    **Analysis**

1.  **Breach of Contract**

Under O.C.G.A § 33-24-7(b): "[m]isrepresentations, omissions, concealment of facts, and incorrect statements" may "prevent a recovery under the policy or contract" if they are "material either to acceptance of the risk or to the hazard assumed by the insurer" or "[t]he insurer in good faith would either not have issued the policy or contract."  O.C.G.A. § 33-24-7(b)(2)-(3).  It is not enough for the insurer to simply identify the misrepresentation, however.  "In order to void a policy of insurance for a misrepresentation in the application, the insurer must show that the representation was false and that it was material in that it changed the nature, extent, or character of the risk."  *Sentry Indem. Co. v. Brady*, 153 Ga. App. 168, 170 (1980) (citation omitted).  The question of materiality is evaluated through the lens of a prudent insurer and assesses

whether the "material misrepresentation is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing a different amount of premium in the event of such acceptance." *Id.* (additional citations omitted). "Ordinarily it is a jury question as to whether a misrepresentation is material, but where the evidence excludes every reasonable inference except that it was material, it is a question of law for the court." *United Family Life Ins. Co. v. Shirley*, 242 Ga. 235, 236 (1978) (citations omitted).  With these standards in mind, the Court will consider whether there are any genuine issues of material fact regarding Plaintiff's breach-of-contract claim.

As noted above, the initial inquiry is whether Mr. Butler made a misrepresentation on his application for insurance that would have been material to Lincoln's decision to assume the risk of insuring him.  Here, the parties initially dispute what application answers Lincoln can rely on for the purpose of obtaining summary judgment on the basis that Mr. Butler provided false, material misrepresentations.  In relation to the breach-of-contract claim, Lincoln argues that two misrepresentations made by Mr. Butler bar Plaintiff's breach-of-contract claim.

The **Application for Life Insurance Part 2 (the "Application")²** asked in **Question 1(c):** Has the proposed insured EVER been diagnosed with, or sought treatment or advice for dependency on or addiction to alcohol or any drug.  (Doc. 26-2 at 40.)  Mr. Butler answered "no" to this question.  (*Id.*)  Lincoln contends that, in light

---

² Plaintiff challenges Defendant's proffer of the Application on the grounds that Mr. Butler never signed the Application.   (Doc. 35 at 2.)   As Defendant notes, however, the "Electronic Signature Consent Authorization" attached to Mr. Butler's application shows that he authorized the use of his electronic signature for the Application.  (Doc. 26-2 at 38.)  Therefore, the Court will consider the Application and the information therein.

of Mr. Butler's history of alcoholism and diagnosis of ALD, the answer to this question should have been "Yes."

Plaintiff contends that Mr. Butler's answer to **Question 1(c)** was not false.  (Doc. 35 at 4-5.)  Per Plaintiff, though Lincoln contends that the answer "no" was false because Dr. Pillai diagnosed Mr. Butler with ALD, Dr. Pillai's deposition testimony reflects that he never diagnosed Mr. Butler with ALD.  (*Id.* at 5.)  Rather, Dr. Pillai informed Mr. Butler that he could have ALD.  (*Id.*)  The notation of ALD comes from a medical record dated July 16, 2008.  (Doc. 26-3 at 88.)  Therein, under "Assessment/Plan/Nurse Notes," the medical record simply states "alcoholic liver dz."  (*Id.*)  When questioned about this notation in his deposition, Dr. Pillai stated that he informed Mr. Butler that his elevated liver enzymes "can be alcoholic liver disease."  (Doc. 26-8 at 18.)  Plaintiff also points out that "Dr. Pillai testified that the mere fact that an individual is diagnosed with 'alcoholic liver disease' does not mean that that individual is dependent on or addicted to alcohol."  (Doc. 35 at 6.)  When queried as to whether ALD is a "misnomer" because an individual does not have to be an alcoholic to have ALD, Dr. Pillai answered "True."  (Doc. 26-8 at 18, 65:2-5.)  In response, Defendant contends that "Question 1(c) clearly requested medical history and information related to a dependency on alcohol and Georgia law does not permit applicants to wordsmith the questions asked in order to excuse a misrepresentation."  (Doc. 25 at 16.)

The Court finds Defendant's efforts to shift the burden of ambiguous question structure to Plaintiff to be unsustainable in light of the manner by which insurance contracts are construed.  In *Jackson Nat. Life Ins. Co. v. Snead*, 231 Ga. App. 406, 411 (1998) (citations omitted), the Georgia Appellate Court made clear that:

The same rule of construing an insurance policy or bond strongly against the insurer and favorably to the insured applies to an application, or matters contained therein, as to the policy itself, the instrument having been prepared by the insurer. The insurance company is also under a duty to frame questions in the application so that they will be free from misleading interpretations. When it has failed to do so, an ambiguity or doubt arises, questions and answers thereto will be construed most favorably to the insured.

In the Court's view, as applied to Mr. Butler, **Question 1(c)** is ambiguous, and, as demonstrated by *Jackson*, the law supports that this ambiguity should be construed *as against Lincoln*, not Plaintiff. Specifically, **Question 1(c)** asked if the insured has ever been diagnosed with, or sought treatment or advice for dependency on or addiction to alcohol. As to the first part of the question—whether the insured has ever been diagnosed with dependency or addiction to alcohol—even if the Court finds that ALD is by itself evidence of a diagnosis of dependency or addiction to alcohol,[3] the Court finds that Dr. Pillai's testimony creates a genuine issue of fact as to whether Mr. Butler actually received a "diagnosis." Mr. Butler was not a medical professional and should not be charged with assuming unequivocally that he received a diagnosis of ALD. Dr. Pillai states that he only informed Mr. Butler that his enzyme elevation could be ALD. Thus, it cannot be said that Mr. Butler's "no" response to **Question 1(c)** is false as a matter of law where a "yes" or "no" response is required to a question about diagnoses received and not a potential or even highly likely diagnoses. *See id.* at 411 (noting "the general rule that answers to questions in an insurance application that are ambiguous and call for "yes" or "no" answers cannot be false as a matter of law"). Simply put,

---

[3] Plaintiff contends that "even if Dr. Pillai did diagnose Mr. Butler with [ALD], a genuine issue of material fact exists as to whether that diagnosis means that Mr. Butler was dependent upon or addicted to alcohol." (Doc. 35 at 14.) The Court agrees. Alcohol consumption does not equal alcohol dependence or addiction. Again, if Lincoln wanted to inquire into additional facts about the full extent of an individual's alcohol intake and how this would have affected its risk analysis, Lincoln should not have used mere "yes" or "no" options in its Application.

though Defendant can point to stray references to the terms "alcoholism, alcohol, or alcohol abuse" in Mr. Butler's medical records, the record is unclear as to whether Mr. Butler was even aware of the content of his medical records, and, importantly, Defendant has not pointed to an actual addiction/dependence diagnosis given by an identifiable physician.[4]

Additionally, as to the second clause of the question, the Court finds that it is debatable as to whether Mr. Butler ever "sought" treatment or advice for a dependence or addiction to alcohol.  The term "sought" implies that an individual went in "search for" the treatment or advice.  While the terms alcoholism, alcohol, or alcohol abuse may appear 29 times in Mr. Butler's medical records as noted by Defendant, Defendant has yet to point to any evidence to demonstrate that Mr. Butler ever "sought," i.e., solicited, searched, or asked, for, advice or treatment specifically for an alcohol addiction or dependency.  In the Court's view, the evidence militates more in favor of a conclusion that Mr. Butler may have "received," whether he wanted it or not, advice and treatment for his alcohol intake.  However, such evidence does not indisputably reflect that Mr. Butler sought the advice or treatment for a diagnosed dependence or addiction.  As such, when choosing between only "yes" or "no," the Court concludes that there is evidence to support Mr. Butler's subjective belief that the question did not apply to his unique set of facts.

---

[4] For example, Defendant points to the fact that medical records reflect that Mr. Butler was on alcohol withdrawal protocol for Delirium Tremens ("DTs") and that in order for someone to go into DTs, "they have to be physically dependent on alcohol."  (Doc. 27 ¶¶ 29-31.)  Important to note, however, is that the evidence regarding the DTs came from Dr. Rebecca Bass.  Dr. Bass testified that she did not put Mr. Butler on the protocol and that he was already on it when she saw him.  (Doc. 26-11 at 6, 15:25-16:3.)  Dr. Bass also stated that she did not know who put Mr. Butler on the protocol.  (*Id.* at 5, 11:4-6.)  Moreover, Dr. Bass stated that a patient may be put "on the DT protocol without them first being in DTs" so that they do not "go into DTs."  (*Id.* at 6, 15:20-22.)  Dr. Bass also stated that she did not know whether Mr. Butler went into DTs because he was already on the protocol when she saw him.  (*Id.* at 15:25-16:3.)  Thus, just because physical dependence on alcohol may be a prerequisite to going into DTs, it does not follow that Mr. Butler was necessarily physically dependent on alcohol merely because he was on the protocol.

Defendant also argues that Plaintiff's claim is barred because Mr. Butler misrepresented his response to **Question 2(d)**.  **Question 2(d)** of the Application asked: In the past 10 years, has the proposed insured been diagnosed with, or sought treatment or advice for any disorder of digestive tract, liver or pancreas.  (*Id.* at 40-41.) Mr. Butler answered "no" to this question as well.  (*Id.* at 41.)  Plaintiff argues that Lincoln's failure to allude to **Question 2(d)** in its rescission letter establishes a genuine issue of material fact as to whether Lincoln has waived its ability to rely upon Mr. Butler's answer to **Question 2(d)** as a basis for rescinding the Policy.  (Doc. 35 at 18-19.)  Plaintiff further contends that even if Lincoln has not waived its ability to rely upon Mr. Butler's answer to **Question 2(d)**, summary judgment would still not be appropriate because it is disputed as to whether Dr. Pillai ever diagnosed Mr. Butler with ALD.  (*Id.* at 19.)  Lincoln contends that Georgia law allows it to rely on any misrepresentation, not just ones cited to in the rescission letter.

Even if the Court accepted Lincoln's argument that it is not estopped from raising new bases for rescission at the summary judgment stage, as the Court noted above, a genuine issue of material fact exists as to whether Mr. Butler was even diagnosed with ALD.  Therefore, Defendant has failed to demonstrate that no genuine issues of material fact exist as to whether Mr. Butler made any false representations.   Accordingly, Defendant is not entitled to judgment as a matter of law on Plaintiff's breach-of-contract claim.

### 2.    Bad Faith

Although the Court has found that there exists a jury issue regarding Mr. Butler's representations on his Application, such a finding does not automatically dictate that Plaintiff's bad-faith claim be submitted to the jury as well.  *Fidelity Bankers Life Ins. Co.*

*v. Renew*, 121 Ga. App. 883, 888-89 (1970).  Under Georgia law, the "test for bad faith is whether the insurer had 'reasonable and probable cause' for defending against the claim." *Winningham v. Centennial Ins. Co.*, 708 F.2d 658, 659 (11th Cir. 1983) (citing Georgia cases).  While "[o]rdinarily, the question of good or bad faith of the insurer is for the jury, . . . if the question of liability is a close one, the insurer cannot be guilty of bad faith.  *Allen v. National Liberty Life Ins. Co.*, 153 Ga. App. 579, 580 (1980) (citations and internal quotations omitted).  To this end, "[p]enalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact." *Fortson v. Cotton States Mut. Ins. Co.*, 168 Ga. App. 155, 158 (1983) (citation omitted).

In the instant case, the Court finds that the question of liability is a close one and that it cannot be said that Lincoln's refusal to pay benefits after discovering Mr. Butler's extensive history related to alcohol constituted a "frivolous or unfounded refusal to pay." *Pearl Assur. Co. v. Nichols*, 73 Ga. App. 452, 455 (1946) ("Though ordinarily [bad faith is a] question[] for the jury, if there is no evidence of such frivolous or unfounded refusal to pay, or if the question of liability is a close one, the court for the furtherance of justice should see to it that a verdict which illegally carries a penalty for bad faith is not allowed to stand.")  The Court's conclusion that Plaintiff's breach-of-contract claim should be submitted to a jury turns on a determination of ambiguity in Application for insurance.  Aside from this fact-based conclusion that is heavily dependent on Mr. Butler's subjective responses to an ambiguous question, the Court finds that Lincoln's denial was nonetheless based on reasonable grounds.  Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiff's bad-faith claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 24) is **GRANTED-IN-PART** and **DENIED-IN-PART**.  Defendant's Motion is denied as to Plaintiff's breach-of-contract claim.  Defendant's Motion is granted as to Plaintiff's bad-faith claim.  Accordingly, the Court will set this case for jury trial as to Plaintiff's breach of contract claim for the January 2014 Trial Term by separate Order.  Because the Court's ruling on Defendant's Motion for Summary Judgment did not require consideration of the testimony sought to be excluded in Defendant's and Plaintiff's respective Motions to Exclude (Docs. 20, 23), the Court **DENIES** these motions **as moot**.  The Parties may resubmit any necessary evidentiary motions fourteen (14) days after notice of the pre-trial conference is entered.

**SO ORDERED**, this  24th   day of September, 2013.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT COURT**